WO                                                                                                                          MW

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Albert Smith,<br><br>               Plaintiff,<br><br>v.<br><br>Keila Venalonzo, et al.,<br><br>               Defendants. | No.   CV-20-02071-PHX-MTL (ESW)<br><br><br>**ORDER** |

Plaintiff Albert Smith, who is confined in the Arizona State Prison Complex (ASPC)-Lewis, brought this civil rights action pursuant to 42 U.S.C. § 1983. Smith has filed a Motion for Summary Judgment (Doc. 88), to which Defendants have filed a Response (Doc. 93).[1]  As follows, Smith's Motion will be denied.

**I.     Background**

On screening pursuant to 28 U.S.C. § 1915A(a), the Court found Smith's single count First Amended Complaint stated an Eighth Amendment excessive force claim and ordered Arizona Department of Corrections Rehabilitation and Reentry (ADC) Correctional Officers Jesse Potts, Timothy Curtis, and Juan Cuevas, Sergeant Keila Venalonzo, and Deputy Warden Travis Scott[2] to file an answer.  (Docs. 6, 78-79.)

---

[1] Smith did not file a reply in support of his Motion, and although Defendants requested and were granted an extension of time to do so, they have not moved for summary judgment.

[2] Finding on further review that Smith's First Amended Complaint named Deputy Warden Scott as a defendant (*see* Doc. 79 at 2), the Court will amend its March 29, 2022 Order (Doc. 92) and grant Smith's prior request to voluntarily dismiss Scott from this case (Doc. 75).

## II. Summary Judgment Standard

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The movant bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323.

If the movant fails to carry its initial burden of production, the nonmovant need not produce anything. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Co., Inc.*, 210 F.3d 1099, 1102-03 (9th Cir. 2000). But if the movant meets its initial responsibility, the burden shifts to the nonmovant to demonstrate the existence of a factual dispute and that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 250 (1986); *see Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995). The nonmovant need not establish a material issue of fact conclusively in its favor, *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968); however, it must "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal citation omitted); *see* Fed. R. Civ. P. 56(c)(1).

At summary judgment, the judge's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. In its analysis, the court must believe the nonmovant's evidence and draw all inferences in the nonmovant's favor. *Id.* at 255. The court need consider only the cited materials, but it may consider any other materials in the record. Fed. R. Civ. P. 56(c)(3).

. . . .

. . . .

. . . .

**III.   Relevant Facts**[3]

On July 30, 2020, Smith, who was then housed in ASPC-Eyman Browning Unit enhanced security housing, ignited a fire in his cell. (Docs. 88 at 11 ¶¶ 1-3; 94 at 4 ¶¶ 1-2.) The Incident Command System was activated, and when officers responded, they found Smith had barricaded his cell by placing his mattress against the door trap. (Doc. 94 at 4 ¶ 3.) Officers Curtis and Cuevas then deployed a water hose to put out the fire. (*Id.* at 4 ¶ 4.)

Once the fire was extinguished, Smith submitted to restraints and was removed from his cell without incident. (Docs. 88 at 9 ¶ 3 and 11 ¶ 4; 94 at 4 ¶ 5.)[4] Smith claims that upon exiting his cell, Deputy Warden Scott instructed "escorting officers" to turn off their cameras and "smash that firebug" (Smith). (Doc. 88 at 9 ¶ 5 and 12 ¶ 9.) Defendants deny Scott gave that instruction and claim Scott had instead directed officers "to utilize a camera when he realized a camera was not present." (Doc. 94 at 2 ¶ 9.)

Officers Potts, Curtis, and Cuevas then escorted Smith out of the cell block towards medical. (Docs. 79 at 6; 94 at 4 ¶ 5.) Upon exiting the cell block, Smith was escorted through a corridor without cameras.[5] (Docs. 79 at 6; 88 at 9 ¶ 6 and 12 ¶ 10; 94 at 3 ¶ 22.) Smith claims the officers then, without any provocation, slammed him face-first into a brick wall and punched him in the face while he remained shackled. (Doc. 88 at 5, 12 ¶¶ 10-12.) Defendants dispute this account and claim Smith "turn[ed] on the officers" and attempted to head-butt Curtis, at which time Curtis and Potts merely "placed" Smith against the wall to regain control. (Doc. 94 at 2 ¶¶ 10-11 and 4 ¶¶ 6-9.)

---

[3] The followings facts are taken from Smith's declaration (Doc. 88 at 9-10), Statement of Facts (*id.* at 11-14), and verified First Amended Complaint (Doc. 79), as well as Defendants' Controverting Statement of Facts (Doc. 94 at 1-4) and Affirmative Statement of Facts (*id.* at 4-5).

[4] Smith alleges there is, but does not present, video footage of him "peacefully submitting to all restraints" and walking out of his cell. (Doc. 88 at 14 ¶¶ 25-27.)

[5] Although ADC policy requires that prisoners in enhanced security housing be escorted in full restraints by two officers and one sergeant with a camera, it is undisputed that there is no camera footage of Smith's escort outside of the cell block. (Docs. 88 at 11 ¶ 2 and 14 ¶¶ 22-23; 94 at 2-3 ¶¶ 2, 22.)

Smith claims he then yelled out to Sergeant Venalonzo, who had just arrived on the scene, "you see them punching me[,] tell them to stop", to which Venalonzo responded "I ain't see s***." (Doc. 88 at 5, 9-10 ¶¶ 7-10 and 12 ¶¶ 13-15.) He states the officers then, without provocation, slammed him onto the ground face-first and repeatedly punched and kicked him in the head while Smith remained shackled. (*Id.* at 5-6, 13 ¶¶ 16-17.) "Venalonzo stood by as [Smith] yelled for help" and told him there were no cameras and to "shut the f*** up." (*Id.* at 13 ¶ 18.) Smith claims Venalonzo then reached into his shorts, grabbed his genitals, and threatened to "yank [] off" his penis if he continued yelling. (Docs. 79 at 7; 88 at 10 ¶ 11.) Defendants also dispute this account and claim that: Venalonzo, who was present for the entire escort, only instructed Smith "to not resist" or "turn on staff"; the officers did not punch or kick Smith; and when Smith became combative and attempted to break free, Curtis and Potts merely "took him to the ground for both his safety and their own." (Doc. 94 at 2-3 ¶ 13-18 and 5-6 ¶¶ 10-14, 23.)

Smith claims he sustained a swollen face, a sprained jaw, facial pain, blurred vision, headaches, difficulty eating, and mental anguish from the officers' use of force and points to his July 30, 2020 medical record (Doc. 88 at 36-37) which notes he complained of jaw pain and his jaw made a popping sound when examined. (Docs. 79 at 6-10; 88 at 7, 13 ¶¶ 20-21, 28.) Defendants deny that Smith sustained any injuries and point to the same exam record (Doc. 96-1) which notes Smith's head was "[n]ormocephalic, round, symmetrical, [had] no lumps, no masses, no lesions noted, [n]o trauma, open wound, blood, [or] foreign bodies noted," and he was cleared to return to housing. (Doc. 94 at 3 ¶¶ 20-21 and 5 ¶¶ 19-21.)

**IV.     Discussion**

The Eighth Amendment's safeguard against cruel and unusual punishments prohibits a prison official's "unnecessary and wanton infliction of pain" on a prisoner. *Wilkins v. Gaddy*, 559 U.S. 34, 36 (2010); *Hudson v. McMillian*, 503 U.S. 1, 5, 8-9 (1992); *Whitley v. Albers*, 475 U.S. 312, 320–21 (1986). Whether a prison official's use of force violates a prisoner's Eighth Amendment rights by "inflict[ing] unnecessary and wanton

pain and suffering ultimately turns on whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Hudson*, 503 U.S. at 6 (quoting *Whitley*, 475 U.S. at 320-21).

In determining whether a prison official's use of force was malicious and sadistic for the purpose of causing harm, and therefore unconstitutionally excessive, courts consider: (1) the extent of the injury, (2) the need for force, (3) the relationship between the need and the amount of force used, (4) the threat "reasonably perceived" by the officials, and (5) " any efforts made to temper the severity" of the force. *Hudson*, 503 U.S. at 7 (citing *Whitley*, 475 U.S. at 321). When reviewing these factors, prison officials "should be accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security." *Whitley*, 475 U.S. at 321–22 (quoting *Bell v. Wolfish*, 441 U.S. 520, 547 (1979)).

Because Smith is the moving party, he bears the burden to show that, when drawing all inferences in the light most favorable to Defendants (the non-movants), there are no triable issues of material fact from which a reasonable jury could find that Defendants' use of force was constitutional. Smith has not met his burden. Rather, if accepting Defendants' version of the facts as true, a reasonable jury could conclude that the officers applied force in a good faith effort to maintain order and alleviate a threat to the safety of those present, rather than to harm Smith maliciously and sadistically. By Defendants' account, prior to their use of force "placing" Smith against the wall and "taking" take him to the ground, Smith had barricaded himself inside his cell after setting it on fire and fought with the officers escorting him to medical once they were outside the cell block.

There is no video or similar objective evidence in the record that indisputably proves Smith's version of events or plainly contradicts Defendants' account. Smith's evidence— his affidavit and medical record—without more, is therefore insufficient to show he is entitled to judgment as a matter of law. Instead, his evidence highlights the presence of genuine issues of disputed fact that can only be resolved through testimony judged by a

jury at trial, not the Court on summary judgment.  Accordingly, Smith has not shown that there are no triable issues of fact from which a reasonable jury could find in Defendants' favor.  Smith's Motion will therefore be denied.

**IT IS ORDERED:**

(1) The reference to the Magistrate Judge is **withdrawn** as to Plaintiff's Motion for Summary Judgment (Doc. 88).

(2) Plaintiff's Motion for Summary Judgment (Doc. 88) is **denied**.

(3) The Court's March 29, 2022 Order (Doc. 92) is **amended** to the extent that Plaintiff's motion to voluntarily dismiss Defendant Travis Scott (Doc. 75) is **granted**.

(4) Defendant Travis Scott is **dismissed without prejudice** pursuant to Federal Rule of Civil Procedure 41(a) and the Clerk of Court shall **terminate** him as a party in this action.

(3) This action is **referred** by random lot to Magistrate Judge John Z. Boyle for the purpose of conducting a settlement conference.

(4) Defendants' counsel must arrange for all parties to jointly contact the chambers of Magistrate Judge John Z. Boyle at (602) 322-7670 within **14 days** to schedule a settlement conference.

Dated this 9th day of September, 2022.

Michael T. Liburdi
United States District Judge